**LYNCH et al. v. VINCENT et al.**

**No. 1301.**

District Court, W. D. Missouri, W. D.

Feb. 25, 1944.

See, also, 48 F.Supp. 249.

Maurice J. O'Sullivan, of Kansas City, Mo., for plaintiff.

Morrison, Nugent, Berger & Johns and W. H. Hoffstot, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is an action authorized by Section 216, Title 29 U.S.C.A. The complainants have sued for overtime wages as provided in Section 207 of said Title. It is claimed by them that they were employed by the dissolved corporation of which the named defendants are trustees. It is alleged in their joint complaint that: "Each plaintiff was employed by said corporation to do, and each did, the same kind of work, on different shifts. The usual shift of duty was from four o'clock p.m. to midnight, for Lynch, and from midnight to eight o'clock a.m. for Cotton."

There was a further averment that: "They were employed as steam power labor to fire, and they did fire and maintain, the steam boilers required to be operated during their shifts, and maintained the water level, steam pressure, fires and everything required to make them function."

There was a further averment that: "Each plaintiff was regularly employed and worked for said corporation from October 25, 1938, to June 15, 1939, and each rendered service for minimum period of 56 hours per week."

Supplementing the above averments was still another one, that: "During all of said time and in addition thereto, during the week ending November 18, 1938, plaintiff Lynch rendered service for a total of 62 hours in one week."

It was further averred: "That plaintiff Lynch was paid at the rate of $30.00 each week for the period from the week ending October 28, 1938, to June 15, 1939, except the week ending November 18, 1938, when he was paid $30.07; that during said time he was lawfully entitled to receive 68.1818¢ per hour for 44 hours per week, or $30.00, plus $1.0227, or one and one-half times the basis rate of pay, for twelve hours per week, amounting to $12.2724 per week for 33-3/7 weeks, which amounts to $410.276, plus an additional $6.14 for six hours additional overtime work during the week ending November 18, 1938, making a total of $458.69."

With respect to the complainant Cotton, it is alleged: "Plaintiff Cotton, during the period from the week ending October 28, 1938, to June 15, 1939, worked a minimum of 56 hours per week, for which he was paid a total of $25.00 per week. He was entitled to a basic pay or 56.818¢ per hour for 44 hours per week, plus one and one-half times the basic rate or $10.2272 per week for 33-3/7 weeks, or a total of $341.-90, * * *."

Additional compensation was prayed for the complainant Cotton upon the ground that he had performed duties for which the company regularly paid higher wages than those allowed him.

The testimony showed that the complainants were both employed as watchmen at the grain elevator operated by the above named dissolved corporation. In addition to their duties as watchmen they perform-

ed some of the services enumerated in the complaint. According to the evidence they worked on different shifts on a time basis of eight hours per day, seven days in the week, or a total of fifty-six hours per week. The evidence was conclusive that during the period of their employment, and as mentioned in the complaint, they worked such hours, but that at no time did they work longer than eight hours per day. It was in evidence that they were granted vacations of probably two days per month but for which they were paid their regular compensation. The evidence further showed that prior to the period mentioned in the complaints and for which the complainants asked overtime compensation the representative of the now dissolved corporation negotiated a labor contract with the Union, in which both the complainants held memberships. This contract anticipated the provisions of the Fair Labor Standards Act and undertook in advance of its enactment to comply with its terms. As indicated, the employees were organized and maintained under their agreement a "closed shop." Bargaining agents of the Union in 1937 and 1938 contracted with respect to "rates of pay, wages, hours of employment," etc. These were all stipulated in a final contract entered into on the 1st day of July, 1938. This contract was effective over the entire period of employment. By it a "straight salary" per week was provided for. To comply with the provisions of the Fair Labor Standards Act, however, a formula for an hourly rate was agreed upon and overtime arranged for. Such an agreement was apparently made to the end that the watchmen (the complainants here) might have the benefit of a fixed weekly income and at the same time perform their duties within the requirements of the Fair Labor Standards Act. The formula agreed upon was precisely adequate on an hourly basis to meet the agreed weekly salaries.

1. It is the contention of diligent and able counsel for the complainants that they were not bound by the Union agreement of July 1, 1938. In support of that contention a Tennessee case, entitled Earle v. Illinois Central R. Co., 25 Tenn.App. 660, 167 S.W. 2d 15, has been cited. In that opinion the Court of Appeals for the Western Section of Tennessee considered a union contract made in 1933. Such contract did not undertake to cover the points raised in this case. It was particularly provided in the union contract in the Tennessee case that: " ' "Nothing in these rules shall be construed to abrogate any local rights the men may now have". * * *.' " 167 S.W.2d loc. cit. 25. On the same page the court further said in discussing the effect of the contract upon the individual member that: "This is not to say, however, that under no circumstances could the complainant be regarded as bound by an agreement made with the carrier by the officials of the Brotherhood with respect to a modification or an interpretation of the contract adopted by him; * * *." All the court did say in that case was that the contract actually made by the employee was his own contract even though he had adopted many of the terms of the contract negotiated by the Union. In fact, he was denied recovery because the terms of the Union contract had become his contract and thereunder he was not entitled to the damages he sought.

The instant case is far different. The National Labor Relations Act was approved by the President on July 5, 1935, and was in full force and effect at the time the contract under discussion was made. By Section 159, Title 29 U.S.C.A., it is specifically provided that: "(a) Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: * * *."

This authority was in pursuance of the right of the employees under Section 157 of said Title "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." This was the law at the time the contract was made for and on behalf of the complainants who admittedly were members of the Union.

It was in evidence that one of the watchmen was present at the time the individual members of the Union were considering the question of accepting the contract. Such contract was duly signed for

and on behalf of the membership including the complainants.

2. Counsel for the complainants rely on the case of Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. In that case the court merely said what the formula should be in computing overtime compensation where there was no agreement with respect thereto. The court suggested, 316 U.S. loc. cit. 581, 62 S.Ct. loc. cit. 1222, 86 L.Ed. 1682: "But there was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed wage, had he seen fit to do so, and no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage. Implication cannot mend a contract so deficient in complying with the law."

Curiously enough, the case of Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, was decided on the same day but appears later in the Volumes. Reference was made to it in the Missel case, 316 U.S. loc. cit. 581, 62 S.Ct. loc. cit. 1222, 86 L.Ed. 1682, and it was there stated: "This contract differs from the one in Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. [1716], * * * where the contract specified an hourly rate and not less than time and a half for overtime, with a guaranty of a fixed weekly sum, and required the employer to pay more than the weekly guaranty where the hours worked at the contract rate exceeded that sum."

Adverting to Walling v. A. H. Belo Corp., 316 U.S. 624, loc. cit. 630, 62 S.Ct. 1223, loc. cit. 1226, 86 L.Ed. 1716, the court said with respect to that contract, which was in every way similar to the one under observation: "But nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the Act."

Again, 316 U.S. loc. cit. 631, 62 S.Ct. loc. cit. 1227, 86 L.Ed. 1716: "But it is agreed that as a matter of law employer and employee may establish the 'regular rate' by contract. In the case before us such an effort has been made, * * *."

The same statement might be made with respect to the case now being considered. Again, the court said, in the Belo case, 316 U.S. loc. cit. 632, 62 S.Ct. loc. cit. 1227, 86 L. Ed. 1716: "The question remains whether the $40 contemplates compensation for overtime as well as basic pay." The reference to $40 was to a weekly stipend for varying hours. At page 632 of 316 U.S., at page 1228 of 62 S.Ct., 86 L.Ed. 1716, the court further said: "It cannot be denied that the flexibility of the overtime rate is considerable, but this flexibility may well have been intended if it was the only means of securing uniformity in weekly income."

At page 634 of 316 U.S., at page 1228 of 62 S.Ct., 86 L.Ed. 1716: "It is entirely unlike the Missel case, * * * 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. [1682] * * *. In the contract in that case, there is no stated hourly wage and no provision for overtime."

In discussing the apparent inconsistency in the Belo contract, the court said: "For the same hours under the Belo contract, at the hourly contract rate of 67 cents, the worker would receive $50.48. There is a difference in compensation, but that is the agreement of the parties and it is within the letter and the intention of the law."

At page 635 of 316 U.S., at page 1229 of 62 S.Ct., 86 L.Ed. 1716, near the close of the majority opinion the court again said: "When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady income to employees with irregular hours. * * * Many such employees value the security of a regular weekly income."

3. It was the object of the Fair Labor Standards Act, among others, to fix a minimum wage and maximum hours. No issue is made here but that the compensation was well above the minimum wage provisions of the Act. The Act contemplated overtime. It sought to discourage overtime on two grounds, (1) for the health of the employee, and (2) in order to distribute jobs. It did not take away from the parties the right of contract even though it involved labor beyond the entire work week fixed by statute. In the absence of an agreement between the parties the statute provides a formula for computing the overtime compensation.

48

■ According to the ruling in the Belo case, the parties, so long as they fulfilled the purposes of the law, may agree upon terms of compensation which will be the equivalent of a straight salary. This was done in the instant case.

4. It is useless to discuss the matter of alleged overtime beyond the 56 hours agreed upon. The complainants themselves declined to support the averments of their complaint. There was offered in evidence a time book which showed the extra hours alleged in the complaint. Quite clearly the figures have been altered and no explanation was made. The book should be disregarded and the evidence of the complainants themselves received as controlling. They had no recollection of working overtime.

5. In view of the above it is not necessary to discuss the question raised as to whether the defendants were suable in view of the facts. It is my opinion that they were not.

■ The statute providing for the dissolution of corporations is Section 5036 and the sections following, Mo.R.S.A. It is not provided how long the trustees, after dissolution, shall continue to act for the dissolved corporation. Whether the judgment of dissolution could fix such time may be questioned. In the absence of a fixed period, a reasonable time should be allowed. The evidence shows that the trustees in good faith marshaled the assets of the corporation and distributed the proceeds as contemplated by law long before this action was filed.

■ The trustees acted in good faith; they moved expeditiously and with reasonable promptness. The law would enjoin such a course upon them. No fault can be ascribed to them. According to the evidence they have no funds now in their hands with which to meet the claims even if established. Under such circumstances they could not be held personally liable, and therefore the complainants could not well maintain this action against them.

Counsel for the defendants have requested findings of fact and statement of conclusions of law which coincide with the foregoing. These have been marked "given" as submitted. Similar requests for the plaintiffs have been denied for the reasons above set out.